# EXHIBIT 1

**Gray, Denise**

| | |
|---|---|
| **From:** | admin@dbranchlaw.com |
| **Sent:** | Monday, January 11, 2021 5:15 PM |
| **To:** | Baldwin, Raymond |
| **Cc:** | Brooks, Samantha L.; David Branch |
| **Subject:** | RE: Kalantaripour v. MFA |
| **Attachments:** | Complaint Package 120320 .pdf |

**[EXT. Sender]**

Good afternoon,
Please see the attached Complaint package and summons in the above referenced matter. Please confirm receipt of service. Thank you.
Best,
Jonathan Fuentes, Legal Assistant
Law Office of David A. Branch & Associates, PLLC
1828 L Street, NW
Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
NOTICE: This correspondence contains confidential and privileged information intended for the sole use of the addressee. Any use or dissemination of the contents or metadata by someone other than that individual or its agent is prohibited. If you are not the addressee, please notify the sender immediately and delete the correspondence any any attachments.

--------- Original Message ---------
Subject: RE: Kalantaripour v. MFA
From: "Baldwin, Raymond"
Date: 1/7/21 9:09 am
To: "davidbranch@dbranchlaw.com" , "admin@dbranchlaw.com"
Cc: "Brooks, Samantha L."

David,

Please provide the complaint, summons and waiver of service form, and we will accept electronically.

Thanks very much.

Ray

**Raymond Baldwin** | Partner | Seyfarth Shaw LLP
975 F Street, N.W. | Washington, DC 20004

Direct: +1-202-828-3583
rbaldwin@seyfarth.com | www.seyfarth.com



The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.

**From:** davidbranch@dbranchlaw.com
**Sent:** Tuesday, January 05, 2021 2:38 PM
**To:** Baldwin, Raymond ; admin@dbranchlaw.com
**Cc:** Brooks, Samantha L.
**Subject:** Kalantaripour v. MFA

[EXT. Sender]

Ray:

Please confirm that you are accepting Ms. Kalantaripour's complaint electronicly.

David Branch
Law Office of David A. Branch & Associates, PLLC
1828 L Street, NW
Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax

NOTICE: This correspondence contains confidential and privileged information intended for the sole use of the addressee. Any use or dissemination of the contents or metadata by someone other than that individual or its agent is prohibited. If you are not the addressee, please notify the sender immediately and delete the correspondence and any attachments.

Filed
D.C. Superior Court
12/09/2020 26:35PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| **NASRIN KALANTARIPOUR**<br>**1240 Kensington Road**<br>**Mclean, VA 22101** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | **Case No.:** 2020ca4751 |
| | ) | |
| v. | ) | **Jury Trial Demand** |
| | ) | |
| **THE GEORGE WASHINGTON** | ) | |
| **MEDICAL FACULTY ASSOCIATES** | ) | |
| **2150 Pennsylvania Avenue, NW** | ) | |
| **Washington, D.C. 20037** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

Comes now Plaintiff Nasrin Kalantaripour (hereinafter "Plaintiff Kalantaripour", "Plaintiff", or "Ms. Kalantaripour"), by and through her attorneys, and hereby files this Complaint against The George Washington Medical Faculty Associates (hereinafter "Defendant", "Defendant MFA", or "GWMFA"). Plaintiff Kalantaripour seeks relief for pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Civil Rights Act of 1866, 42 U.S.C. § 1981 for claims of discrimiantion and retaliation. Plaintiff Kalantaripour seeks damages, including but not limited to declaratory, injunctive and other equitable relief, compensatory and punitive damages, litigation expenses and reasonable attorneys' fees, based on Defendant's discriminatory, harassing, retaliatory, and otherwise unlawful actions against Plaintiff Kalantaripour.

## JURISDICTION AND VENUE

1

1.      This Court has jurisdiction over the subject matter of this Complaint pursuant to D.C. Code § 11-921.

2.      Venue is proper in this Court in that the events and omissions giving rise to Plaintiff's claims occurred here in the District of Columbia and Defendant may be found here.

## PARTIES

3.      Plaintiff Kalantaripour is a Middle Eastern female, who was born in Iran, and is a resident of the Commonwealth of Virginia.

4.      Defendant George Washington Medical Falculty Associates is a non profit, physician-lead practice group in the Washington, D.C. metro area which provides comprehensive patient care, including whole person care across fifty-two medical and surgical specialties.

## FACTS

5.      Plaintiff Kalantaripour was hired on May 21, 2018, as the Practice Manager in GWMFA's Neurology, Neurosurgery and Psychiatry Departments.  Plaintiff Kalantaripour has a Master's degree in Microbiology and an MBA in Healthcare from George Washington University and previously worked at the National Institutes of Health for eight years before her employment at GWMFA. As the Practice Manager, Plaintiff Kalantaripour reported to the Practice Group Administrator Adrien Saks and she assisted Mr. Saks and the managers of the various departments in their administration duties.

6.      In July 2018, Plaintiff Kalantaripour was asked by Mr. Saks to assist with the administration of the Dermatology Department where the Clinical Manager had been recently terminated. When the position of Clinical Manager was advertised, it indicated that GWMFA was seeking to hire a clinical lead or nurse manager. Plaintiff Kalantaripour had not been trained for a

clinical position and did not have clinical experience nor had she been hired to serve in a clinical position. Clinical training is normally reserved for individuals with medical backgrounds, such as nurses, medical assistants, and providers.

7.      Plaintiff Kalantaripour and Mr. Saks worked closely with the Dermatology Department Chair, Dr. Alison Ehrlich, and they met twice a month on Mondays at 4:00 p.m., and Plaintiff Kalantaripour met separately with Dr. Ehrilich on Wednesdays at noon as needed. On July 25, 2018, Plaintiff Kalantaripour and Mr. Saks and Dr. Ehrlich had their first meeting to discuss challenges in the Dermatology Department and strategies to address the issues. Plaintiff Kalantaripour prepared a list of her observations and how she intended to address those issues and shared that information at the meeting. Following the meeting, Mr. Saks sent Plaintiff Kalantaripour a text with the message, "You were excellent."

8.      At the time Plaintiff Kalantaripour was asked to assist with the administration of the Dermatology Department, the Department was in a period of turmoil attributed to the recent eliminations of the Clinical Manager and Patient Services Specialist ("PSS") positions, poor employee morale, and a series of patient complaints about the operation of the Dermatology Department. To address these issues, as well as those of other departments at MFA, the Patient Experience Department provided feedback. The Manager of the Patient Experience Department, Fadi Hachem, provided feedback to the Dermatology Department.

9.      In August 2018, Plaintiff Kalantaripour and Mr. Saks worked on a few presentations centered on a comprehensive staffing and providers model to demonstrate the continued need for additional staff and other areas of improvement. They also put in place a few processes to improve and streamline patient flow, access and overall process improvement,

3

including improvement at check in, insurance verification, online leave request and approval, implementation of Wait List, call management, inventory system, providers' schedule procedure, Missing charges procedures, entering Light box notes electronically, utilizing the use of the Dermatology Space by renting them to the other departments.

10.     Due to her country of birth, Plaintiff Kalantaripour has a Middle Eastern accent, although she speaks perfect English.

11.     During her time at MFA, Plaintiff Kalantaripour faced humiliation, harassment and discrimination, most notably from Dr. Ehrlich and Dr. Patel. Dr. Patel, in particular, would mock Plaintiff Kalantaripour when she would speak and pretend that he did not understand her, or claim that they had agreed on certain issues and become upset when actions were not taken by Plaintiff Kalantaripour, when in fact there was no agreement at all. Defendant's Human Resources Business Partner was Jennifer Hoffpauir and Plaintiff Kalantaripour submitted to Human Resources no less than three complaints about Dr. Ehrlich and no less than five complaints about Dr. Patel. MFA never properly addressed Plaintiff Kalantaripour's complaints.

12.     Plaintiff Kalantaripour began to observe discriminatory practices early in her tenure. Senior managers discussed plans to transfer two employees who worked in Washington, D.C. and took FMLA leave, to Virginia to pressure the employees to quit their positions. In addition, in contrast to Plaintiff Kalantaripour's experience with Defendant's human resources department, when an employee, Elizabeth Hazuks, who is younger than Plaintiff Kalantaripour and Caucasian, complained about Dr. Ehrlich's treatment of her to Human Resources Business Partner Jennifer Hoffpauir, a full investigation was launched with interviews conducted with nearly everyone in the department. There was one complaint from Ms. Hazuka to Mr. Saks on

4

Friday, July 6, 2018 and Jennifer Hoffpauir met with her on Monday, July 9, 2018.  The complaint was escalated immediately and almost everyone in the department was interviewed.

13.     Plaintiff Kalantaripour worked well with Mr. Saks until she began to complain about abusive treatment by Dr. Ehrlich and Dr. Patel.

14.     On November 2, 2018, Plaintiff Kalantaripour emailed Ms. Hoffpauir to report that Dr. Patel had come into Plaintiff Kalantaripour's office to inquire about the hiring of another medical assistant. When Plaintiff Kalantaripouri told him that they had not approved one yet, he slammed his fist down on the table and screamed at her, "This is not acceptable" over and over again. He then threatened Plaintiff Kalantaripour that he would go to the Tenth Floor to speak to Pam McClain, the Chief Operating Officer, and Dr. Robert Kelly, the CEO.

15.     On November 5, 2018, Plaintiff Kalantaripour followed up with an email to Human Resources. She also informed Ms. Hoffpauir through email as well as reporting of all her complaints to Mr. Saks.  Dr. Patel acknowledged that Plaintiff Kalantaripour had complained about his unacceptable behavior three previous times.

16.     On November 27, 2018, Plaintiff Kalantaripour emailed Ms. Hoffpauir about a harassing incident from Dr. Patel. Dr. Patel had come into Plaintiff Kalantaripour office to ask if a new medical assistant had been hired. Plaintiff Kalantaripour told Dr. Patel that a new MA had not yet been approved for hire, to which Dr. Patel responded by slamming his fist on Plaintiff Kalantaripour's desk, screaming at her, and threatening to speak to Pam McClain, Chief Operating Officer, and Dr. Robert Kelly, the Chief Executive Officer.

17.     Dr. Ehrlich's abusive treatment of Plaintiff Kalantaripour on November 27, 2018 was witnessed by a medical assistant, Shanice Johnson.  The incident was so upsetting to Plaintiff

5

Kalantaripour that she emailed Mr. Saks to report the harassment. Mr. Saks responded by text, "Don't let Ehrlich get you down. You are doing great!".  The following day, on November 28, 2018, Plaintiff Kalantaripour sent Ms. Hoffpauir an email about an incident the day before in which Dr. Ehrlich harassed her. On November 29, 2018, Plaintiff Kalantaripour met with Ms. Hoffpauir to discuss the ongoing difficulties Plaintiff Kalantaripour was facing from Dr. Ehrlich's harassment.

18.     After speaking with others in the Dermatology Department, Ms. Hoffpauir concluded that there were a number of problems in the Department, including the absence of a Dermatology Clinical Manager, an insufficient number of MAs, as well as lack of support from existing MAs, an insufficient number of PSSs and the inability to handle patient call volume, and high turnover and low morale.

19.     On November 29, 2018, Ms. Hachem escalated a patient incident in Dermatology to Pamela McClain, Chief Operating Officer. On November 30, 2018, Ms. McClain escalated it to Dr. Robert Kelly, then-Chief Executive Officer. Specifically, a patient was very upset due to their inability to make an appointment. On one hand, MFA alleged that Ms. Kalantaripour utilized the MAs too much, yet then complained that she does not utilize them enough. In addition, in order to be a team player and address the staff shortage issue, Ms. Kalantaripour volunteered to answer the phones if needed while she and Mr. Saks were working. While Plaintiff Kalantaripour was volunteering to answer the phones, suture removal appointments were something that MAs' were scheduling. Some of the suture removals required a provider to be present at the appointment.

20.     On December 4, 2018, Plaintiff Kalantaripour and Ms. Hoffpauir discussed a negative interaction between Plaintiff Kalantaripour and Dr. Patel that day in which Dr. Patel raised his voice at her because he was upset about a last-minute change to an MA's schedule.

21.     On December 11, 2018, Plaintiff Kalantaripour circulated the MA schedule for the week of December 12-17, 2018. In the schedule Plaintiff Kalantaripour had to account for the continuing staff shortage in how she assigned the MAs. Dr. Ilana DeLuca, who is Dr. Patel's wife, complained about the schedule to Ms. Hoffpauir.

22.     Dr. DeLuca sent an email to Ms. Hoffpauir and stated, "I have had continued staffing issues since I began working here in October and have now reached the point where I am unable to provide appropriate patient care given [Ms. Kalantaripour's] decision being made as outlined below." Plaintiff Kalantaripour adjusted Dr. DeLuca's schedule to reflect the shortage of staff—she had no other options. Dr. DeLuca's email was requesting a medical assistant schedule in December and indicated that she was assured by Mr. Saks and Dr. Ehrlich that she would have a specific  medical assistant to work with her after the New Year—not before. Dr. DeLuca spoke with Mr. Saks and Dr. Ehrlich, not Plaintiff Kalantaripour. Additionally, because the process took longer to hire a medical assistant, Defendant GWMFA allowed temporary staff to be hired for coverage as needed while in the process of hiring medical assistants.

23.     On December 18, 2018, Dr. Patel again came into Plaintiff Kalantaripour's office and yelled at her. Dr. Patel's yelling was so loud that it was heard by the staff, including those who worked at the other end of the clinic, such as Dr. Kelly Redbord who later asked Plaintiff Kalantaripour if she was okay. Dr. Redbord heard Dr. Patel yelling at Plaintiff Kalantaripour.

Plaintiff Kalantaripour met with Mr. Saks in his office after the incident and he asked her how she was holding up. He also told her that he would let Ms. McClain know about the incident.

24.     Plaintiff Kalantaripour only attended one of the Dermatology Operation meetings and was excluded from those weekly meetings that were discussing the operation of the department that she was managing. Ms. Saks was not happy about the decision. He mentioned a few times that he did not understand why Pam McClain does not include Plaintiff Kalantaripour in the meetings in the department that she managed.

25.     On December 18, 2018, Dr. DeLuca's medical assistant could not make it to the Bethesda office where Dr. DeLuca was working that day. Plaintiff Kalantaripoiur asked Tony Garcia, one of the medical assistants and the only medical assistant not assigned to any physicians and was working on inventory, to go to Bethesda an assist Dr. DeLuca. Plaintiff Kalantaripour spoke with Dr. DeLuca and informed her that Mr. Garcia was on the way to assist her.  Dr. DeLuca did not indicate that she had an issue with Mr. Garcia assisting her. Plaintiff Kalantaripour then advised Dr. Patel as well. Dr. Patel flew into a rage and came into Plaintiff Kalantaripour's office screaming and brought Dr. Friedman's assistant, Kayleigh Hausmann with him. Plaintiff Kalantaripour informed Dr. Patel that it was not appropriate to get Ms. Hausmann involved in the situation. She also stated to Dr. Patel that she would not say anything without Mr. Saks in the room as a witness. Dr. Patel stated that he wanted Dr. Friedman to be in the room. Mr. Saks arrived at the meeting and informed Dr. Patel that nothing had been agreed upon in the meeting that they all previously held regarding sending medical assistants to other clinics for coverage.

26.     After this incident, Plaintiff Kalantaripour met with Mr. Saks in his office. Mr. Saks asked Plaintiff Kalantaripour how she was doing and informed her that he had discussed with Ms.

McClain Dr. Patel's treatment of Plaintiff Kalantaripour and she was not happy with Dr. Patel's actions.

27.     On January 10, 2019, Dr. Patel emailed Plaintiff Kalantaripour regarding ordering surgical instruments. Plaintiff Kalantaripour was not responsible for ordering clinical equipment for Dr. Patel's department but she was responsible for approving the supply ordered and she kept a list of staff that ordered different supplies for the department and the larger orders were handled by Nancy McCormick. Plaintiff Kalantaripour had to check with Mr. Saks before ordering supplies. Since the directive of ordering the instruments was not previously discussed with Plaintiff Kalantaripour before, she called Mr. Saks that day and spoke to him about Dr. Patel's request. Mr. Saks instructed Plaintiff Kalantaripour not to worry about the order and that he would take care of it since he still needed to speak with Dr. Ehrlich and finalize the decision to place the order and that he would advise Dr. Patel of the change in directive.

28.     On January 14, 2019, there was an inclement weather event and a few staff called out. Plaintiff Kalantaripour was working on the coverage for the clinic MAs, phones, and front desk. Plaintiff Kalantaripour gave her credit card to Kayleigh Hausmann to order pizza for the staff and let the staff know that their lunch was covered. At 11:44 a.m., Dr. Patel texted Plaintiff Kalantaripour saying that the staff in Bethesda was wondering if they were being provided lunch as well. Plaintiff Kalantaripour called Dr. Patel to let him know that she was working on that, too, and would like his input of what to order as she did not know the places to eat in that location. Plaintiff Kalantaripour also mentioned that GWMFA can have their lunch ordered and delivered/picked up by around noon (there were about five people including Dr. Patel in the

9

Bethesda location). Plaintiff Kalantaripour called Dr. Patel and, as soon as he picked up the phone, he started screaming at her that she had neglected the employees and it was not acceptable.

29.     On January 17, 2019, Mr. Saks sent an email indicating that the order for instruments requested by Dr. Patel was in process and he would provide the estimated time of arrival. On January 22, 2019, Dr. Patel sent Plaintiff Kalantaripour an email inquiring about the status of the order and Plaintiff Kalantaripour contacted Mr. Saks for the status of the order. Mr. Saks informed her that he had not yet placed the order and instructed Plaintiff Kalantaripour to get him from Ms. McCormick.  Mr. Saks at that point indicated that he did not agree with the $46,000 price of the order. Ms. McClain was copied on the emails between Mr. Saks and Plaintiff Kalantaripour.  On December 4, 2018, Plaintiff Kalantaripour called and spoke to the Purchasing Department and later emails a Purchase Order.  The Purchasing Department notified her that it required additional information and she sent the required information later that day, January 22, 2019. Defendant GWMFA issued Plaintiff Kalantaripour a written Performance Counseling Memorandum as a result of this incident. The purchase order had to be approved by Plaintiff Kalantaripour, Mr. Saks and Ms. McClain before the Purchasing Department would process it, and Plaintiff Kalantaripour and Mr. Saks approved the purchase order immediately and forward it to Ms. McClain. Ms. McClain delayed approving the purchase order until January 28, 2019. Thus, Plaintiff Kalantaripour was issued a memorandum accusing her of jeopardizing patient care and at the same the person who caused the delay by waiting four days to approve the purchase order, Ms. McClain, was the individual who issued her the memorandum.

30.     On February 14, 2019, Plaintiff Kalantaripour was placed on a performance improvement plan ("PIP").  Approximately one week after the PIP was issued, Dr. Freidman

10

corresponded with Plaintiff Kalantaripour and stated, "You were thrown into a really untenable situation . . . you were handed the reigns to a sinking ship . . . this wasn't the job you were even meant to do . . . you came in under a different assumption . . . and you were thrown into something that you didn't even ask for."   He further commented that Plaintiff Kalantaripour was a very capable employee an she was "very much victimized" and the situation was unfair to her.  Plaintiff Kalantaripour asked to meet with Ms. Hoffpauir to discuss it, but Ms. Hoffpauir did not meet with Plaintiff Kalantaripour until March 4, 2019.

31.     Defendant GWMFA extended Plaintiff's PIP through March 2019 and hired an individual to replace Plaintiff Kalantaripour and required Plaintiff to train the new employee. Despite her exemplary performance, Plaintiff Kalantaripour's employment was terminated by Ms. McClain in April 2019.  Human Resources at GWMFA never addressed the complaints by Plaintiff Kalantariour against Dr. Patel and Dr. DeLuca.

32.     Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and exhausted all administrative remedies prior to filing suit.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C § 2000e
### (Race, Sex, and National Origin Discrimination)

33.     Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

34.     At all pertinent times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e.

35.     At all pertinent time, Plaintiff was entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e.

36.     Title VI of the Civil Rights Act of 1964, 42 U.S.C § 2000e, prohibits discrimination in employment based on an individual's race, color, religion, sex, and national origin.

37.     Defendant, in violation of Title VII of the Civil Rights Act, 42 U.S.C § 2000e, knowingly and intentionally engaged in unlawful discrimination against Plaintiff Kalantaripour and subjected her to disparate treatment and a hostile work environment based on her race, sex, and national origin.  Dr. Patel discriminated against Plaintiff Kalantaripour by mocking her accent and pretending that he could not understand her when she spoke, and assaulted her in the workplace based on her race, sex and national origin, by confronting her on a regular basis and screaming at her, invading her personal space, slamming his fist on her desk and berating her for staffing issues which were beyond her control. Dr. Ehrlich engaged in similar conduct of yelling at Plaintiff in the work force.  Defendant did not subject American born and male employees to abusive conduct in the workplace. Defendant GWMFA further humiliated Plaintiff Kalantaripour by failing to take actions to investigate her claims of discrimination and protect her against Dr. Ehrlich and Dr. Patel, and rather placing her on a performance improvement plan, requiring her to train her replacement and then terminating her employment.

38.     As a direct and proximate cause of the Defendant's actions, Plaintiff Kalantaripour has suffered emotional distress and pain and suffering.

39.     Defendant had no legitimate business reason for any such acts. Plaintiff informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e**
**(Retaliation)**

12

40.     Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

41.     At all pertinent times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

42.     At all pertinent times, Plaintiff was entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

43.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, prohibits an employer from taking action against an employee because the employee engages in protected activity and reports acts of discrimination and/or opposes acts of discrimination.

44.     Defendant, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, knowingly and intentionally engaged in unlawful retaliation against Ms. Kalantaripour by placing her on a Performance Improvement Plan ("PIP") and terminating her employment after she reported Dr. Ehrlich and Dr. Patel's harassment of her to human resources.

45.     As a direct and proximate cause of the Defendant's actions, Plaintiff Kalantaripour has suffered emotional distress and pain and suffering.

46.     Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices that are not yet fully known.

**COUNT III**
**Violation of the Civil Rights Act of 1866**
**42 U.S.C § 1981**
**(Race Discrimination)**

13

47.    Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

48.    At all pertinent times, Defendant was an employer within the meaning of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

49.    At all pertinent time, Plaintiff was entitled to protection under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

50.    The Civil Rights Act of 1866, 42 U.S.C. § 1981, provides that all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enfore contracts as enjoyed by white citizens and prohibits an employer from discriminating aginst any individual with repect to the individual's compensation, terms, conditions or privileges of employment because of such individual's race, ancestry, or ethnicity.  Section 1981 forbids all racial discrimination in the making of private as well as public contracts.

51.    Defendant, in violation the Civil Rights Act of 1866, 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful discrimination against Plaintiff Kalantaripour and subjected her to disparate treatment and a hostile work environment based on her race.  Dr. Patel discriminated against Plaintiff Kalantaripour by mocking her accent and pretending that he could not understand her when she spoke, and assaulted her in the workplace based on her race by confronting her on a regular basis and screaming at her, invading her personal space, slamming his fist on her desk and berating her for staffing issues which were beyond her control. Dr. Ehrlich engaged in similar conduct of yelling at Plaintiff in the work force. Defendant did not subject American born and male employees to abusive conduct in the workplace.Defendant GWMFA further humiliated Plaintiff Kalantaripour by failing to take actions to investigate her claims of

14

discrimination and protect her against Dr. Ehrlich and Dr. Patel, and rather placing her on a performance improvement plan, requiring her to train her replacement and then terminating her employment.

52.     As a direct and proximate cause of the Defendant's actions, Plaintiff Kalantaripour has suffered emotional distress and pain and suffering.

53.     Defendant had no legitimate business reason for any such acts. Plaintiff informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

**COUNT IV**
**Violation of the Civil Rights Act of 1866**
**42 U.S.C. § 1981**
**(Retaliation)**

54.     Plaintiff realleges and incorporates by reference the above paragraphs as if fully stated herein.

55.     At all pertinent times, Defendant was an employer within the meaning of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

56.     At all pertinent times, Plaintiff was entitled to protection under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

57.     The Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits an employer from taking action against an employee opposes acts of discrimination.

58.     Defendant, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful retaliation against Ms. Kalantaripour by placing her on a Performance Improvement Plan ("PIP") and terminating her employment after she reported Dr. Ehrlich and Dr. Patel's harassment of her to human resources.

15

59.     As a direct and proximate cause of the Defendant's actions, Plaintiff Kalantaripour has suffered emotional distress and pain and suffering.

60.     Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices that are not yet fully known.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kalantaripour prays as follows:

A.     That the Court issue an Order declaring Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, and declaring Plaintiff eligible to receive equitable and other relief;

B.     Enter judgment against Defendant;

C.     Issue a permanent injunction prohibiting Defendant from engaging in any further violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Civil Rights Act of 1866, 42 U.S.C. § 1981;

D.     Enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law;

E.     Order Defendant to refrain from any action against Plaintiff, or any other person, for participating in or supporting this case in any manner;

F.     Order Defendant, individually and collectively, to pay compensatory and punitive damages in an amount no less than five million dollars ($5,000,000);

G.     Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees and costs; and

H.       Order Defendant to pay pre-judgment and post-judgment interest as provided by law.

Date: November 19, 2020                          Respectfully submitted,


                                                         _____*/s/ David A. Branch*_____
                                                         David A. Branch, D.C. Bar No.: #438764
                                                         Law Offices of David A. Branch &
                                                         Associates, PLLC
                                                         1828 L Street, NW, Suite 820
                                                         Washington, DC 20036
                                                         (202) 785-2805 phone
                                                         (202) 785-0289 fax
                                                         davidbranch@dbranchlaw.com

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims against Defendant.

17

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Nasrin Kalantaripour
_____
Plaintiff

vs.

Case Number     2020 CA 004751
_____

The George Washington Medical Faculty Associates
_____
Defendant

Serve On:
The George Washington
Medical Faculty Associates
2150 Pennsylvania Avenue, NW
Washington, DC 20037

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
_____
Name of Plaintiff's Attorney

Law Office of David A. Branch and Associates, PLLC
_____
Address

1828 L Street, NW, Suite 820, Washington, DC 20036
_____

(202) 785-2805
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date     12/3/2020
_____

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오           የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

--------------------------------------------------------------------
                                            Demandante

    contra

                                  Número de Caso: _____

--------------------------------------------------------------------
                                            Demandado

## CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                         *SECRETARIO DEL TRIBUNAL*

-----------------------------------------
Nombre del abogado del Demandante

                         Por: _____

-----------------------------------------
Dirección                                     Subsecretario

-----------------------------------------
                                  Fecha _____

Teléfono
如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

만일 번역을 원하시면 (202) 879-4828 로 전화 하십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                            Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Nasrin Kalantaripour

Case Number: 2020 CA 004751

vs

Date: November 19, 2020

The George Washington Medical Faculty Associates

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* <br> David A. Branch | Relationship to Lawsuit |
| --- | --- |
| Firm Name: <br> Law Office of David A. Branch & Associates, PLLC | ☒ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.:             Six digit Unified Bar No.: <br> (202) 785-2805           438764 | ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury        ☐ 6 Person Jury        ☒ 12 Person Jury

Demand: $_____        Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

NATURE OF SUIT:       *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

| | | |
| --- | --- | --- |
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property |     Over $25,000 Pltf. Grants Consent |     Over $25,000 Consent Denied |
| ☒ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees |     Under $25,000 Pltf. Grants Consent |     Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| |     Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander |     Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud |     Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D.  REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

November 19, 2020
_____
Date

CV-496/ June 2015



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

NASRIN KALANTARIPOUR
    Vs.                                C.A. No.     2020 CA 004751 B
THE GEORGE WASHINGTON MEDICAL FACULTY ASSOCIATES

## INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

    (1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

    (3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

    (4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

    (5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                        Chief Judge Anita M. Josey-Herring

Case Assigned to: Judge KELLY A HIGASHI
Date:       November 20, 2020
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, February 19, 2021
Location:  Courtroom JM-4
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:**  (AUDIO ONLY/Dial-in by Phone):

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2:** (LAPTOP/ DESKTOP USERS 1):

Open Web Browser in Google Chrome and copy and paste following address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3:** (LAPTOP/ DESKTOP USERS 2):

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE**:  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4:** (Ipad/SMART PHONE/TABLET):

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

| | 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|---|
| | 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| | 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| | 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| | 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| | 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| | JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| | A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| | B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| | B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| | B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| | B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |