**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NASRIN KALANTARIPOUR,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE WASHINGTON MEDICAL FACULTY ASSOCIATES,<br><br>Defendant. | Case No. 21-cv-272 (JMC) |

**ORDER**

Plaintiff Nasrin Kalantaripour filed a motion for reconsideration, ECF 20, asking the Court to revisit its prior order granting summary judgment to Defendant and dismissing her claims of discrimination by her former employer, Medical Faculty Associates ("MFA"). ECF 19. The facts regarding Kalantaripour's claims are detailed at length in the Court's prior opinion in the matter. *Kalantaripour v. George Wash. Med. Fac. Assocs.*, No. 21-cv-272, 2026 WL 352994, at *1–4 (D.D.C. Feb. 9, 2026). The Court assumes familiarity with that prior opinion and the summary judgment record, and discusses the factual and legal background here only as is sufficient to explain its decision to **DENY** the motion.

Kalantaripour moves under Federal Rule of Civil Procedure 59(e) to reconsider the dismissal of her hostile work environment, national origin, and racial discrimination claims.[1] The decision to provide 59(e) relief is discretionary, and this Court does not have to grant such a motion

[1] The issues that Kalantaripour raises in the reconsideration motion are only germane to her national origin, race, and hostile work environment claims, and as such the Court considers the motion to reconsider as only reaching those claims. *See also Kalantaripour*, 2026 WL 352994, at *7 n.9 (finding that the summary judgment "record [was] devoid of evidence or arguments regarding the claim that [Kalantaripour's] sex was specifically a motivating factor of her disparate treatment").

unless it determinates that there is an intervening change of controlling law, new evidence, or a need to correct a clear error or prevent manifest injustice. *Fox v. Am. Airlines, Inc*., 389 F.3d 1291, 1296 (D.C. Cir. 2004). Further, Rule 59(e) motions are not intended to be "an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it opportunity for the losing party to argue new issues that could have been raised earlier. *Thomas ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).

Kalantaripour's motion does not argue that reconsideration is warranted due to an intervening change of controlling law or the discovery of new evidence. Instead, she argues that the Court clearly erred in its application of the summary judgment standard, the governing law, and ignored or improperly weighed evidence in the record which militated against granting summary judgment. A movant for reconsideration faces a very exacting standard when moving on the grounds of clear error. *Smith v. Lynch*, 115 F. Supp. 3d 5, 12 (D.D.C. 2015) (stating that a judgment must be "dead wrong" to constitute clear error (quoting *Lardner v. FBI*, 875 F. Supp. 2d 49, 54 (D.D.C. 2012)). Further, "manifest injustice" is a narrow concept which arises from "'rulings that upset settled expectations—expectations on which a party might reasonably place reliance,'" and "does not result merely because a harm may go unremedied." *Id.* (quoting *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007)). Manifest injustice thus requires a "result that is fundamentally unfair in light of governing law." *Id.*

The arguments raised in the motion for reconsideration do not meet these standards. As an initial note, Kalantaripour does a good deal of what is not permitted on reconsideration—arguing new issues that could have been raised earlier but were not, or rearguing theories already presented to the Court at summary judgment. For example, Plaintiff argues that the Court overlooked

evidence of pretext in the summary judgment record, including purported statements that on the day of her termination, she was "told she would return to the job she was originally hired for but needed to maintain a 'good relationship' with Dermatology." ECF 20 at 6. But the Court is unable to identify where in the summary judgment record this statement was made or at which point, if any, Kalantaripour's motion raised it in the prior briefings. And Kalantaripour's motion fails to cite to any part of the summary judgment record to clear up the confusion. Even if the Court were to consider this statement on reconsideration, Kalantaripour provides no context about the quote—who made it and whether it was made by a decisionmaker—such that the Court could find that a reasonable jury could infer pretext.[2]

Setting aside evidence that was not clearly put before the Court at summary judgment, the Court does not find any of Kalantaripour's other purported identification of clear error to be persuasive. First, Kalantaripour argues that the Court misapplied the summary judgment standard by failing to draw inferences in her favor and resolving disputed facts in the record in favor of MFA on the question of whether her termination (and other treatment at MFA) was a pretext for discrimination. But the Court accounted for and rejected almost all of these potential objections in its ruling on the summary judgment motion. She argues that the Court resolved a disputed fact in the record—the date on which Kalantaripour placed an order of surgical implements—against Kalantaripour. Again, the Court does not view that fact to be in *genuine* dispute based on the evidence presented by the Parties. *See Kalantaripour*, 2026 WL 352994, at *9. And, as the Court pointed out in its opinion, regardless of when Kalantaripour actually placed the order, the

[2] As the Court stated in the initial opinion, while "the Court views the evidence in the record in the light most favorable to Kalantaripour as the nonmoving party," it "must rely on her legal arguments to understand how her proffered evidence creates a genuine dispute." *Kalantaripour*, 2026 WL 352994, at *9 n.13. It is not the Court's role to act as an advocate for the Plaintiff and construct legal arguments on her behalf, or to hunt for evidence that is buried in the briefs or the record and not clearly presented to the Court on summary judgment. *Id.*

undisputed record shows that Kalantaripour failed to respond to Dr. Patel's questions about the status of the order for nearly two weeks and exhibited other issues of responsiveness that were later cited in her performance counseling letter and her performance improvement plan (PIP). ECF 15-2 at 161, 167. Kalantaripour's purported dispute about the actual date the order was placed did not speak to the larger concerns about her responsiveness and communication with departmental providers, and thus did not weigh as pretext as to those issues. The Court is also not convinced by Kalantaripour's efforts to demonstrate pretext, either through direct reference to specific comparators or to purportedly broader patterns of treatment of Middle Eastern employees at MFA's Dermatology department. The Court addressed this evidence in its prior opinion and provided reasons why the comparator evidence was not probative of pretext, and why the pattern evidence was unsupported by admissible record evidence sufficient to allow a jury to infer pretext. *Kalantaripour*, 2026 WL 352994, at *10. Kalantaripour cannot now try to aggregate these two categories of legally-insufficient evidence and argue that they should now add up to an inference of pretext. Her arguments about MFA's purported differential treatment of her complaints versus those of another white employee, the departmental survey results about the Dermatology practice's performance, and her supervisors' previously-positive assessments of her performance fail for the reasons addressed in the Court's opinion. *Id.* at *10–11.

Finally, the Court rejects Kalantaripour's arguments regarding her hostile work environment claim. The Court finds no error, let alone clear error, in its conclusion that Kalantaripour had not presented evidence at summary judgment showing that her treatment by Dr. Patel and Dr. Ehrlich was motivated by Kalantaripour's national origin other than Kalantaripour's conclusory belief that this was the case. The Court found this to be so, even when accepting Kalantaripour's descriptions of her interactions with these individuals as true. *Kalantaripour*,

2026 WL 352994, at *10. And again, even had Patel and Ehrlich's treatment of her—"repeatedly yelling at her, threatening her with discipline, and criticizing her job performance"—been motivated by discriminatory animus, Kalantaripour has not shown that the treatment was sufficiently severe or pervasive to qualify as a hostile work environment under the statute, which the Court found to be an independent and sufficient basis for dismissing the claim. *Id.* at *11–12. On reconsideration, Kalantaripour claims that the Court failed to view the alleged incidents in light of "all the circumstances" and thus minimized the severity and pervasiveness of the conduct. ECF 20 at 2. The Court respectfully disagrees. Further, the Court notes that Kalantaripour's reconsideration motion attempts to expand the scope of activities that she believes the Court should have considered under the totality of the circumstances, but ignores or fails to acknowledge the Court's conclusion that she could not support her hostile work environment claim with actions like the PIP, the termination, and the failure to investigate her complaints. *Kalantaripour*, 2026 WL 352994, at *12 n. 16.

Kalantaripour has not met the stringent standard to justify reconsideration based on clear error or a manifest injustice. Accordingly, it is hereby **ORDERED** that the Motion for Reconsideration of Order Granting Summary Judgment, ECF 20, is **DENIED**.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: August 25, 2026